**F. Ray MARSHALL, Secretary of Labor, United States Department of Labor, Plaintiff-Appellant,**

v.

**Refugio PARTIDA, Defendant-Appellee.**

No. 78–1335.

United States Court of Appeals, Fifth Circuit.

March 21, 1980.

Donald S. Shire, Gregory O'Duden, U. S. Dept. of Labor, Washington, D. C., for plaintiff-appellant.

Bean, Zavaleta & Rosado, Hector M. Zavaleta, Kenneth R. Carr, El Paso, Tex., for defendant-appellee.

Before THORNBERRY, RONEY and TATE, Circuit Judges.

THORNBERRY, Circuit Judge:

In this case we must review a district court finding that certain laundromat employees worked only two hours per day for purposes of the minimum wage provisions of the Fair Labor Standards Act, 29 U.S.C. §§ 201–219 (1976). Because we conclude that this finding is clearly erroneous, we

reverse the district court decision and remand for a new trial.

Between 1969 and 1972 Partida employed Gregoria Ramos, then Alicia Munoz, successively as the attendant for his coin-operated laundry in El Paso. Partida negotiated the employment terms with Ramos' son-in-law and with Munoz's husband; the parties signed no written agreements. Partida furnished the attendant and her family living quarters, separated by a counter and a partition from the rear of the laundromat. The attendant also received all income from the soap and soft drink vending machines, plus a percentage of the income from drycleaning that the attendant received at the laundromat. The total value of the living quarters and other income was about $1600 per year.

The laundromat was open for business seven days a week from seven in the morning until ten at night during Ramos' tenure, and from six-thirty in the morning until ten-thirty at night during Munoz's tenure. Partida wanted the attendant to open the laundromat in the morning, close it at night, and clean up afterwards. Munoz testified that this job took her about two hours of work each day. Record at 49. Partida testified that when Munoz's children helped her clean up, the job took about half an hour or an hour. Record at 30. Partida also expected the attendant to accept and return drycleaning; the laundromat served as a substation where customers could drop off and pick up clothes for cleaning at Partida's central drycleaning plant. Partida also expected the attendant to make change for laundromat customers in the period before he installed a change machine, and to return money lost in faulty machines at all times.

■ The parties disagree about whether Partida required either the attendant or a substitute to be present in the laundromat during all hours of operation. Partida conceded that he wanted the attendant or her family "to keep their eyes on" the machines to see that they operated properly. Record at 11, 29. Partida also expected the attendant or her family to mop up spillage and clean the machines throughout the day. Record at 16. One witness testified that he called the laundromat about four or five times and received no answer. Record at 73. Another witness testified that he delivered soft drinks to the laundromat every Monday morning and that the attendant was on the premises only about every other week, although he did not indicate whether a substitute appeared in her place on these occasions. Record at 70. While Ramos worked as the attendant she did alteration work in the laundromat for her own profit. Partida, however, did not object to this activity; in fact, he encouraged Ramos to accept alteration work so that more customers would be attracted to the laundromat. Record at 32. Throughout the years in question Partida kept no records to show the hours that the attendants worked; his failure to keep such records violated section 211(c) of the Fair Labor Standards Act.

A Department of Labor compliance officer calculated the compensation received by the attendants and determined that under the minimum wage provisions of the Fair Labor Standards Act the women were entitled to back pay and overtime on the basis of a fifteen hour day for seven days per week. After a bench trial in 1972, the district judge determined that the attendants were not "employees" for purposes of the statute, and that the attendants worked not in excess of two hours per day. On appeal this court reversed, and held that the attendants constituted "employees" under the statute. *Brennan v. Partida*, 492 F.2d 707 (5th Cir. 1974). We remanded the case for a new finding about the number of hours the attendants worked each day:

> Because of the summary nature of the trial court's finding of fact, we are unable to discern the basis of the court's determination that the claimants worked only two hours each day. A hearing on remand is necessary, therefore, to deter-

mine the amount of time for which the claimants were entitled to be compensated under the FLSA.

At the hearing, the applicable standard of proof will be that enunciated by the Supreme Court in *Anderson v. Mt. Clemens Pottery Co.*, 1946, 328 U.S. 680, 687–88, 66 S.Ct. 1187, 1192, 90 L.Ed. 1515:

> [A]n employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate.

492 F.2d at 710.

A different district judge presided over the case on remand. Instead of holding an additional hearing as specified in the court of appeals opinion, the judge relied upon the original trial record and confirmed the previous judge's finding that the attendants worked only two hours per day.

■ Although the trial record would support a finding that the attendants worked less than the full fifteen hours per day urged by the Secretary, we conclude that the finding that the attendants worked only two hours per day is clearly erroneous. The testimony from the attendants and from Partida indicates that opening, closing, and final cleaning alone took an attendant two hours per day, and half an hour to an hour if the attendant's family members assisted her. The district court finding makes no allowance for the time that the attendant spent each day handling drycleaning, making change, cleaning ma-

chines, mopping spillage, and generally keeping her eyes on the place as Partida expected. The attendant is entitled to compensation for the full amount of time that she spent actually performing such tasks. To what extent she must be compensated for her remaining idle time depends upon whether the "time is spent predominantly for the employer's benefit or for the employee's . . . dependent upon all the circumstances of the case." *Armour & Co. v. Wantock*, 323 U.S. 126, 133, 65 S.Ct. 165, 168, 89 L.Ed. 118 (1944).

■ We remand the case for a new finding, based upon either the present record alone, or also upon additional evidence from a new hearing if the district court concludes that a new hearing is necessary. We remind the district court, as we did on the first appeal, that the attendants may be entitled to compensation for the time that substitutes took their place, as long as Partida knew about the substitutes and acquiesced in their participation. 492 F.2d at 710 n. 3. We also remind the district court

> . . . not to penalize the employee by denying him any recovery on the ground that he is unable to prove the precise extent of uncompensated work. Such a result would place a premium on an employer's failure to keep proper records in conformity with his statutory duty; it would allow the employer to keep the benefits of an employee's labor without paying due compensation as contemplated by the Fair Labor Standards Act.

*Mt. Clemens*, 328 U.S. at 687, 66 S.Ct. at 1192.

REVERSED AND REMANDED.